**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ANTHONY BRADY, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | Case No. _____ |
| vs. | : : | State Court Case No. 2020CH01090 |
| FRESH EXPRESS INCORPORATED, | : : | |
| Defendant. | : : | |

## NOTICE OF REMOVAL OF FRESH EXPRESS INCORPORATED

Defendant Fresh Express Incorporated ("Defendant" or "Fresh Express"), by and through its counsel, Blank Rome LLP, pursuant to 28 U.S.C. §§ 1331, 1332, 1441, 1446, 1453, and 1711, and the Local Rules of the United States District Court for the Northern District of Illinois (the "Local Rules"), hereby removes this action from the Circuit Court of Cook County, Illinois, Chancery Division ("State Court"), to the United States District Court for the Northern District of Illinois, Eastern Division. In support thereof, Defendant states as follows:

### BACKGROUND

1.      Defendant exercises its rights under the provisions of 28 U.S.C. §§ 1331, 1332, 1441, and 1446 to remove this case from the State Court where this case is pending under the name and style of *Anthony Brady v. Fresh Express Incorporated*, Case No. 2020CH01909.

2.      28 U.S.C. § 1441(a) provides any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant to the U.S. district court for the district and division embracing the place where such action is pending.

3.      This is a civil action instituted in the State Court that has not been tried.

4.      On January 28, 2020, Plaintiff Anthony Brady ("Plaintiff" or "Brady") filed his original *Class Action Complaint* (the "Complaint") in the State Court. A true and correct copy of the entire file, including the Complaint, is attached as **Exhibits A**, **B**, and **D**.

5.      As set forth below, Defendant received a copy of the Summons and Complaint on January 30, 2020; this Notice is thus timely under 28 U.S.C. §§ 1446(b) and 1453. *See* Ex. B, p.4; Declaration of David Specht in Support of Notice of Removal, attached as **Exhibit C**, ¶ 4.

6.      As more fully set forth below, this case is properly removed to this Court under 28 U.S.C. § 1441 because this Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), in that Plaintiff's action constitutes a class action—as defined in 28 U.S.C. § 1332(d)(1)(B)— pursuant to the Class Action Fairness Act, codified at 28 U.S.C. §§ 1332(d) and 1453 ("CAFA").

7.      Separately, this case is also properly removed to this Court under 28 U.S.C. § 1331 because this matter arises under the laws of the United States.

## SUBJECT MATTER JURISDICTION

### THIS CLASS ACTION IS REMOVABLE UNDER THE CLASS ACTION FAIRNESS ACT, 28 U.S.C. §§ 1332(d), 1453

8.      CAFA, 28 U.S.C. § 1332(d), was enacted "to facilitate adjudication of certain class actions in federal court." *See Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 554 (2014). Accordingly, CAFA expands jurisdiction for diversity class actions by creating federal subject matter jurisdiction if: (1) a class has 100 or more class members; (2) at least one class member is diverse from at least one defendant (*i.e.,* "minimal diversity"); and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate. *See* 28 U.S.C. § 1332(d); *see also Roppo v. Travelers Commer. Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

2

9.      As set forth below, this Court has subject matter jurisdiction pursuant to CAFA Section 1332(d)(2), because: (1) this case is a class action as defined in 28 U.S.C. § 1332(d)(1)(B); (2) at least one member of the putative class is a citizen of a state different from any defendant; and (3) there is more than $5 million, exclusive of interest and costs, in controversy in the aggregate.  Because all three requirements have been met, removal is appropriate in this case.

## I.      The Minimal Diversity of Citizenship Requirement is Satisfied.

10.     At the time Plaintiff commenced this action against Defendant in State Court, and now at the time of removal, there was and is minimal diversity of citizenship as contemplated by Section 1332(d)(2)(A) of the CAFA.

11.     CAFA provides that the minimal diversity requirement is met if any member of a class of plaintiffs is a citizen of a state different from any defendant.  28 U.S.C. § 1332(d)(2)(A). This requirement is met here, as Defendant is a citizen of a different state than the named Plaintiff.

12.     The Complaint identifies the named Plaintiff as a citizen of Illinois.  Ex. A, ¶ 4.

13.     The Complaint also identifies Defendant as being incorporated in Delaware.  *Id.*

14.     For purposes of diversity citizenship under 28 U.S.C. §§ 1332(a) and (d), Defendant is a citizen of a state other than the state of Illinois.

15.     As a citizen of Delaware, Defendant is a citizen of a state other than the state of citizenship of at least one named Plaintiff identified in the Complaint; accordingly, diversity of citizenship is established under 28 U.S.C. § 1332(d)(2)(A).

## II.     The Amount in Controversy Requirement Under CAFA is Satisfied Because the Aggregate Amount in Controversy Exceeds $5,000,000.

16.     Under CAFA, the claims of the individual plaintiffs in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. §§ 1332(d)(6), (d)(11).

113780.00613/122713422v.1

17.     The "party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is *in controversy* between the parties.  A removing defendant need not confess liability in order to show that the controversy exceeds the threshold." *Roppo*, 849 F.3d at 579 (citing *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)) (emphasis added). "When a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.*

18.     Here, Plaintiff's claims meet the jurisdictional threshold set forth in Section 1332(d)(6) in that, if awarded, the aggregate amount of the damages and other relief sought by the putative class would exceed $5,000,000, exclusive of interest and costs.

19.     Where, as here, a complaint fails to plead a specific amount of damages or disclaim an amount of damages in excess of $5,000,000, the party seeking removal need only make a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. *Dart Cherokee*, 135 S. Ct. at 554.

20.     A party seeking to remove under CAFA must establish the amount in controversy by showing "a reasonable probability that the stakes exceed the minimum." *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005). "Once the proponent of jurisdiction has set out the amount in controversy, only a 'legal certainty' that the judgment will be less forecloses federal jurisdiction." *Id.* at 448-49 (citing *Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 (1938)).

21.     CAFA's legislative history makes clear that doubts regarding the maintenance of class actions in state or federal court should be resolved in favor of federal jurisdiction. *See, e.g.*, S. Rep. No. 109-14, at *43, as reprinted in 2005 WL 627977 ("[o]verall, new section 1332(d) is

4

intended to expand substantially federal court jurisdiction over class actions"); *see also Dart Cherokee*, 135 S. Ct. at 550 ("no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court").

22. The Complaint seeks relief for purported violations of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq*. ("BIPA"). *See* Ex. A ¶ 103.

23. Plaintiff specifically alleges Defendant violated BIPA via the use of its biometric timekeeping system, which collected his (and putative class members') fingerprints without first: (a) obtaining the putative class members' consent to use their biometrics; (b) providing written notice to the putative class members of Defendant's use of biometrics; and (c) making a written biometrics policy available to the putative class members. *Id.* ¶¶ 15, 60-62.

24. Plaintiff seeks "statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1)" for Defendant's alleged BIPA violations. *Id.* ¶¶ 84, 94, 103. The Complaint also seeks injunctive relief "to protect the interests of Plaintiff and the Class by requiring Defendant to comply with BIPA's requirements for the collection, storage, use and dissemination of biometric identifiers and biometric information[.]" *Id.* Moreover, the Complaint seeks attorney's fees and costs. *Id.*

25. As a threshold matter, a removing defendant may aggregate all a plaintiff's claims to determine the total amount in controversy. *See* 28 U.S.C. § 1332(d)(6) (under CAFA, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds $5,000,000, exclusive of interest and costs).

26. The Complaint does not disclaim an amount in controversy in excess of $5,000,000.

27.     BIPA provides for liquidated damages of $1,000 for each negligent violation. 740 ILCS 14/20(1). BIPA also provides for liquidated damages of $5,000 for each intentional or reckless violation. 740 ILCS 14/20(2).

28.     Here, Plaintiff alleges Defendant "disregarded" its obligations under BIPA and further "disregarded the Class' privacy rights." *See* Ex. A ¶¶ 65-66, 70. That allegation, in conjunction with Plaintiff's prayer for relief under 740 ILCS 14/20(2), demonstrates that Plaintiff is seeking the greater of actual damages or $5,000 for each alleged BIPA violation.

29.     The amount of damages sought plausibly could include the combined total of the statutory damages for each member of the putative class. 28 U.S.C. § 1332(d)(6) (under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds . . . $5,000,000, exclusive of interest and costs"). Therefore, the total of these statutory damages amounts during the relevant period makes up the plausible damages at issue in this case.

30.     Plaintiff also seeks to represent a class of "[a]ll persons who were enrolled in the biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois during the applicable statutory period." Ex. A. ¶ 28. The investigation conducted by the undersigned indicates at least 1,000 Fresh Express employees located in Illinois used a biometric timeclock that involved placing their thumb or finger on a device. *See* Ex. C. ¶ 6. Accordingly, for purposes of CAFA aggregation[1], there are at least 1,000 members of the putative class alleged by Plaintiff. Therefore, the aggregate amount of liquidated damages for all individuals in the putative class, each at $5,000 or more, exceeds $5 million.

---

[1] Notably, Defendant is only making this representation with respect to CAFA removal and does not concede the potential size of the putative class for purposes of numerosity under Rule 23 of the Federal Rules of Civil Procedure.

113780.00613/122713422v.1

31.     Further, Plaintiff seeks to certify a class of "***several hundred*** or more individuals," and seeks a minimum of $1,000 per "each" violation of BIPA.  *See* Ex. D p.1 (emphasis added); *see also* Ex. A. p.18.

32.     Assuming "several hundred" class members is only 200 employees, and using the lower amount of $1,000 per violation, it would only take 26 violations for each class member to reach the $5,000,000 threshold.[2]  Considering Plaintiff's allegations that employees were required to scan their fingerprints "multiple times"—including at the start and end of a shift, and for lunch breaks—the amount in controversy is easily satisfied.  Ex. A ¶ 37.

33.     In addition, Plaintiff seeks an award of "reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS 14/20(3)."  *Id.* ¶¶ 84, 94, 103.

34.     Accordingly, by joining their claims in one action, Plaintiff and his purported class have placed in controversy at least $5,000,000 in damages.

35.     The $5,000,000 amount in controversy threshold is thus satisfied for purposes of satisfying 28 U.S.C. § 1332(d)(6).

**III.    The Court Should Not Decline to Exercise Jurisdiction Over This Action.**

36.     Pursuant to 28 U.S.C. § 1332(d)(3), a district court may decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed.

37.     Plaintiff cannot satisfy Section 1332(d)(3), as Plaintiff submits that all putative class members are Illinois citizens. Ex. D at p.3.  It is therefore impossible for less than two-thirds of the members of the putative class to be Illinois citizens.  Further, Defendant is a citizen of

---

[2] 200 x $1,000 x 26 = $5,200,000.

7

Delaware.  Ex A. ¶ 4.  This action was originally filed in the State of Illinois.  *See generally* Ex. A.  Thus, this Court should not decline to exercise jurisdiction on the basis of Section 1332(d)(3).

38.     Pursuant to 28 U.S.C. § 1332(d)(4), a district court shall decline to exercise jurisdiction over a class action where two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed, or where:

   a.    greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

   b.    at least one defendant is a defendant:

      i.    from whom significant relief is sought by members of the plaintiff class;

      ii.   whose alleged conduct forms a basis for the claims asserted by the proposed plaintiff class; and

      iii.  who is a citizen of the State in which the action was originally filed; and

   c.    principal injuries resulting from the alleged conduct of each defendant were incurred in the State in which the action was originally filed; and

   d.    during the three-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

39.     The factors outlined in Section 1332(d)(4) are not present here.  By its terms, 28 U.S.C. § 1332(d)(4) cannot be met where no defendant is a citizen of the state where the action was originally filed.  Thus, this Court should not decline to exercise jurisdiction over this action.

### THIS CLASS ACTION IS REMOVABLE UNDER 28 U.S.C. § 1331

40.     Removal is also proper under 28 U.S.C. § 1331 because this matter arises under the laws of the United States.

8

41.     As attested to in the Declaration of Mr. David Specht, members of Plaintiff's proposed class, *see* Ex. A ¶ 71, include Defendant's employees who were enrolled in the company's biometric timekeeping system and subsequently used a biometric timeclock while employed/working for Defendant in Illinois.  Ex. C ¶ 7.  Notably, a large percentage of these Illinois employees were members of a union—*i.e.*, the Plastics Workers' Union, Local 18, AFL-CIO ("Union").  *Id.*  The Union entered into a collective bargaining agreement ("CBA") with Plaintiff's employer, Fresh Express.  *Id.*; *see generally Agreement*, attached to Specht. Decl. as **Exhibit C1**.  The CBA is effective from October 28, 2017, through October 27, 2020, and thus, was in effect during the employment of members of Plaintiff's proposed class.  *See* Ex. C1 p.1.

42.     The CBA's stated "purpose" is to, among other things, "establish wages, hours and working conditions."  *See* Preamble ¶ C p.3.  It is also intended to "set forth the entire agreement between the Company, the Union and the employees covered by this Agreement concerning rates of pay, wages and other conditions of employment to be observed by the parties hereto."  *Id.*

43.     Paragraph C of the Preamble further states "[t]he Union recognizes the responsibility imposed upon it as the ***exclusive bargaining agent*** of the employees represented." *Id.* (emphasis added).  Likewise, Article I, Section 1.1 of the CBA states "[t]he Company recognizes the Union as the sole and ***exclusive bargaining agency*** with respect to rates of pay, hours of work and other conditions of employment, for all its production and warehouse employees at its facility currently located at 1109 East Lake Street, Streamwood, Illinois[.]"  *Id.* Art. I, Sec. 1.1 (emphasis added).

44.     Moreover, Article II, Section 2.1 states that Plaintiff's employer "retains all of the rights, power, authority and functions of management, except to the extent that they are expressly and specifically modified or limited by the written, specific provisions of this Agreement. The

9

Employer shall retain all such inherent rights, powers, authority or function regardless of whether such right, power, authority or function has been exercised by the Employer in the past. The Company retains its right to demote, discipline, suspend and discharge for just cause, and to make and enforce reasonable production standards and shop rules." *Id.* Art. II, Sec. 2.1.

45.     Article II, Section 2.3 states that Plaintiff's employer "will not be required to give the Union advance notice in the event it utilizes managers or supervisors for instruction of or training with bargaining unit employees. In such case the manager or supervisor may perform bargaining unit work so long as it does not displace a bargaining unit employee. It is understood that routine training and instruction is not considered to constitute a supervisor performing bargaining unit work for which advance notice is required." *Id.* Art. II, Sec. 2.3.

46.     Article IV, Section 4.1 of the CBA details a Grievance Procedure that applies to "any dispute or difference of opinion between the Company and the Union, or between the Company and any of its employees covered by this Agreement, involving the meaning, interpretation or application of the express provisions of this Agreement." *Id.* Art. IV, Sec. 4.1.

47.     Article XIX also states that the CBA "constitutes the entire agreement between the parties and concludes collective bargaining for its term." *Id.* Art. XIX.

48.     Plaintiff specifically alleges Defendant violated Section 15(b) of BIPA, which requires a private entity to provide written notice and obtain written consent before obtaining an individual's biometric data. *See* Ex. A ¶¶ 85-94; 740 ILCS 14/15(b). Significantly, BIPA permits the notice and consent requirements to be satisfied through "the subject's legally authorized representative." 740 ILCS 14/15(b).

49.     Whether an employer satisfied BIPA's notice and consent requirements through its negotiations with the Union—and encompassed by the terms of the CBA—requires the

10

interpretation of the CBA language concerning the employer's rights to manage and direct its workforce and the Union's right to negotiate the union members' conditions of employment. This need is highlighted by Plaintiff's own allegation that "Defendant's above-described use of biometrics benefits only Defendant. There is no corresponding benefit to employees: Defendant **has required or coerced employees** to comply in order to receive a paycheck, after they have been committed to the job." *See* Ex. A ¶ 70 (emphasis added).

50.     Notably, the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158, governs unfair labor practices, including efforts to coerce employees in the exercise of their rights to collective bargaining. The NLRA preempts state law claims "if it conflicts with the underlying goals and policies of the NLRA or stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *520 Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1125 (7th Cir. 2008).

51.     Here, it is well-settled that "if a dispute necessarily entails the interpretation or administration of a collective bargaining agreement, there's no room for employees to sue under state law—in other words, state law is preempted to the extent that a state has tried to overrule the union's choices on behalf of the workers." *Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)). In *Miller*, the Seventh Circuit noted that it was "not even possible" to litigate a dispute about how an employer requires and uses biometric data for its workforce without asking whether the union has consented on the employees' collective behalf. *Id.*

52.     As the *Miller* court noted, where it is impossible to litigate under a state statute without examining what the union knew and agreed to, a defendant is entitled to remove a suit to

11

federal court under federal-question jurisdiction. *Id.* (citing 28 U.S.C. §§ 1331, 1441). That is the precise scenario presented to this Court in the current matter.

53. Accordingly, this matter is federally preempted by the NLRA and removal is independently proper under 28 U.S.C. § 1331 federal question jurisdiction.

## PLAINTIFF HAS ALLEGED A CONCRETE, MATERIAL HARM SUFFICIENT TO ESTABLISH ARTICLE III STANDING

54. Defendant bears the burden of establishing that this Court has jurisdiction. *Tri-State Water Treatment, Inc. v. Bauer*, 845 F.3d 350, 352–53 (7th Cir. 2017) (explaining that "the party seeking removal . . . bears the burden of establishing federal jurisdiction"). Article III standing is a component of the jurisdictional analysis. *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018) ("As the party invoking federal jurisdiction, [defendant] had to establish that all elements of jurisdiction—including Article III standing—existed at the time of removal.").

55. For a defendant to establish plaintiff has Article III standing, a defendant must demonstrate plaintiff alleges an injury-in-fact that was caused by defendant and that is redressable by this Court. *Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)) ("The 'irreducible constitutional minimum of standing' consists of three elements: injury-in-fact, causation, and redressability.").

56. For an injury to qualify as an injury-in-fact, it must be "concrete and particularized" and "actual and imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1548 (2016). For an injury to be concrete, it "must be "'*de facto*'; that is, it must actually exist." *Id.* at 1548 (quoting BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). A "bare procedural violation, divorced from any concrete harm" does not qualify as an injury-in-fact. *Id.* at 1549. However, a procedural statutory violation may constitute an injury-in-fact on its own if the legislature has elevated a *de facto* injury that was "previously inadequate in law" "to the status of

[a] legally cognizable injur[y]." *Lujan*, 504 U.S. at 578. Nonetheless, a statutory violation only causes an injury that is concrete for Article III standing purposes if it presents an "'appreciable risk of harm' to the underlying concrete interest that [the legislature] sought to protect by enacting the statute." *Groscheck*, 865 F.3d at 887 (quoting *Meyers v. Nicolet Rest. of De Pere, LLC*, 843 F.3d 724 (7th Cir. 2016)).

57.     Here, Plaintiff has alleged the type of "concrete" injury-in-fact that courts within the Seventh Circuit have held sufficiently conferred Article III standing in BIPA cases.[3]

58.     The Seventh Circuit addressed the question of Article III standing in the context of a BIPA action in *Miller*, *supra*. In that case, union airline workers alleged their employers required them to use fingerprint identification without following the procedures laid out in sections 15(a) and 15(b) of BIPA. The union workers further alleged these violations caused them concrete harms or increased the likelihood they might suffer such harms. Specifically, the workers alleged their employers may have shared their fingerprint data with outside administrators, which created a "greater risk of disclosure" to "criminals who hack into a computer system." *Miller*, 926 F.3d at 902. The workers also alleged that had they not consented to the fingerprint identification, they faced the "prospect of a material change in [the] terms and conditions of [their] employment." *Id.* These allegations of material harm stemming from BIPA violations gave their claims the "concrete dimension" necessary to establish Article III standing. *Id.*

59.     Here, as in *Miller*, Plaintiff's Complaint alleges that he has been subjected to an immediate and increased risk of harm resulting from the exposure of his biometrics to third-parties.

---

[3] As before, this discussion of injury is limited to whether Plaintiff has alleged an injury-in-fact sufficient to confer Article III jurisdiction on this Court. Defendant hereby contests that Plaintiff has suffered an actual injury—or that he is an "aggrieved party"— under BIPA, and hereby reserves the right to raise such an argument at a later date.

113780.00613/122713422v.1

60.     Specifically, according to the Complaint, Defendant's act of allegedly creating "unique, permanent biometric identifiers associated with each employee" "*exposes* Defendant's employees, *including Plaintiff*, *to serious and irreversible privacy risks*." Ex. A ¶ 8 (emphasis added). "For example, if a biometric database *is hacked, breached, or otherwise exposed* employees have no means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this highly personal and private information." *Id.* ¶ 9 (emphasis added). The Complaint further alleges that "Plaintiff has *continuously and repeatedly been exposed to the risks and harmful conditions* created by Defendant's [BIPA] violations[.]" *Id.* ¶ 41 (emphasis added).

61.     Plaintiff's Complaint also contains allegations of concrete harm resulting from the alleged disclosure of his biometrics to "third parties." Ex. A ¶ 18. ("Upon information and belief, Plaintiff and the Class members may be aggrieved because Defendant may have improperly disclosed employees' biometrics *to third-party vendors* in violation of BIPA.") (emphasis added); *see also id.* ¶ 35 ("Defendant then used Plaintiffs biometrics as an identification and authentication method to track his time, potentially *with the help of a third-party vendor*.") (emphasis added).

62.     As in *Miller*, Plaintiff has similarly alleged Defendant may have "shared [his] fingerprint data with outside administrators" which created a "greater risk of disclosure" to those who could "hack into a computer system." 926 F.3d at 902. Removal is thus equally proper here.

63.     Moreover, Plaintiff's allegations of a greater risk of disclosure to third-parties distinguishes this case from prior opinions where the action was remanded back to state court. *Cf. Goings v. UGN, Inc.*, 2018 WL 2966970 (N.D. Ill. June 13, 2018) (Bucklo, J.) (granting motion to remand where plaintiff knew he provided his biometric data to his employer and where there was no allegation of third party disclosure); *Howe v. Speedway, LLC*, 2018 WL 2445541 (N.D. Ill.

14

May 31, 2018) (Wood, J.) (finding no injury-in-fact where employer did not obtain written consent nor create a retention and destruction policy before scanning plaintiff's fingerprint but where no additional harm or third party disclosure occurred); *see also Bryant v. Compass Grp. USA, Inc.*, 2020 WL 433868, at *3 (N.D. Ill. Jan. 28, 2020) (remanding BIPA action back to state court where "[p]laintiff, unlike the plaintiffs in *Miller*, [did] not allege that [d]efendant shared her biometric information with third parties or created an immediate risk that such data would fall into the hands of third parties.") (Kendall, J.).

64.     Even setting aside Plaintiff's allegations of harm, the status of members of Plaintiff's proposed class as unionized employees during the relevant period provides yet another basis to find Article III standing.

65.     Critically, the Seventh Circuit in *Miller* also observed that ***unionized*** employees who were required to provide employers with their fingerprints in connection with a biometric system used to clock-in and out of work had alleged a concrete injury based on their status as union members.  926 F.3d at 902.

66.     Indeed, *Miller* opined that if the unions had not consented to these procedures regarding biometric timekeeping, or if the employers had not provided the workers' unions with requisite information, a court (or adjustment board) might order a change in how employees clocked-in and -out of work; the prospect of a material change in the workers' terms and conditions of employment gave their suits the requisite concrete dimension to establish Article III standing. *Id.  Miller* further noted that either the discontinuation of the practice, or the need for employers to agree to higher wages to induce the unions to consent, presents more than a bare procedural dispute. *Id.* (citing *Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 697 (7th Cir. 2018) ("Article

III's strictures are met not only when a plaintiff complains of being deprived of some benefit, but also when a plaintiff complains that she was deprived of a chance to obtain a benefit.")).

67.     In this case, the status of members of Plaintiff's proposed class as unionized employees of Defendant, and Plaintiff's claims relating to Defendant's biometric timekeeping system, also present sufficient allegations of concrete harm sufficient to confer Article III standing in this BIPA action.

68.     Thus, based on the allegations in the Complaint, Plaintiff has adequately alleged the existence of a "concrete" injury-in-fact sufficient to confer Article III standing in this Court.

## PROCEDURAL COMPLIANCE

69.     In accordance with the requirements of 28 U.S.C. § 1446(b), a Notice of Removal should be filed within thirty (30) days after service of the Summons and Complaint on a defendant.

70.     Here, Defendant received the Summons and Complaint on January 30, 2020.  *See* Ex. B at p.4; *see also* Ex. C. ¶ 4.

71.     Pursuant to 28 U.S.C. § 1441 *et seq*., the right exists to remove this case from the State Court to the U.S. District Court for the Northern District of Illinois, which embraces the place where the action is currently pending.

72.     The U.S. District Court for the Northern District of Illinois embraces the county in which the State Court action is now pending (*i.e.*, Cook County); thus, this Court is a proper venue for this action pursuant to 28 U.S.C. § 93(a)(1).

73.     No previous application has been made for the relief requested herein.

74.     Pursuant to the provisions of 28 U.S.C. § 1446(a), attached hereto are copies of all process, pleadings, and orders served upon Defendant; the *Class Action Complaint*, bearing case number 2020CH01090, filed in the Circuit Court of Cook County, Illinois (*see* **Exhibit A**,

attached); the Summons, with an Affidavit of Service (*see* **Exhibit B**, attached); and *Plaintiff's Motion for Class Certification* (*see* **Exhibit D**, attached).

75.     Written notice of the filing of this Notice of Removal will be served upon counsel for Plaintiff as required by law.

76.     A true and correct copy of this Notice of Removal will be filed with the clerk of the State Court, as required by law, and served upon counsel for Plaintiff.

**WHEREFORE**, Defendant Fresh Express Incorporated hereby removes this case from the State Court, where it is now pending, to this Court.

DATED: February 27, 2020

Respectfully submitted,

**BLANK ROME LLP**

*s/ William J. Dorsey*
William J. Dorsey, Esq.
444 W. Lake Street, Suite 1650
Chicago, IL 60606
Tel.: (312) 776-2512
Fax: (312) 264-2430
Email: wdorsey@blankrome.com

Jeffrey N. Rosenthal, Esq.
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Tel.: (215) 569-5553
Fax: (215) 832-5533
Email: Rosenthal-J@BlankRome.com

Michael L. Cioffi, Esq.
(*pro hac vice forthcoming*)
David J. Oberly, Esq.
(*pro hac vice forthcoming*)
1700 PNC Center
201 E. Fifth Street
Cincinnati, Ohio 45202
Tel.: (513) 362-8701

17

Fax: (513) 362-8702
Email: Cioffi@BlankRome.com
Email: DOberly@BlankRome.com

*Attorneys for Defendant,*
*Fresh Express Incorporated*

18

## CERTIFICATE OF SERVICE

I, William J. Dorsey, Esquire, hereby certify that, on February 27, 2020, I electronically filed the foregoing Notice of Removal of Defendant Fresh Express Incorporated with the Court via the ECF System and is available for viewing and downloading from the ECF system, and a true and correct copy was served to all counsel of record registered with the ECF system.

**BLANK ROME LLP**

*s/ William J. Dorsey*
William J. Dorsey, Esq.

*Attorney for Defendant,*
*Fresh Express Incorporated*

19

113780.00613/122713422v.1